**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WARREN BOARDLEY, | : | |
| | | Civil Action No. 08-0983 (NLH) |
| Petitioner, | : | |
| | | |
| v. | : | **OPINION** |
| | | |
| JEFF GRONDOLSKY, et al., | : | |
| | | |
| Respondents. | : | |

**APPEARANCES:**

| | |
|---|---|
| Petitioner <u>pro se</u> | Counsel for Respondents |
| Warren Boardley | Karen Helene Shelton |
| F.C.I. Fort Dix | Asst. U.S. Attorney |
| P.O. Box 2000 East | 402 East State Street |
| Fort Dix, NJ 08640 | Trenton, NJ 08608 |

**HILLMAN**, District Judge

Petitioner Warren Boardley, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] The respondents are Warden Jeff Grondolsky and the U.S. Parole Commission.

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

Based on the submissions of the parties, the Petition will be denied.

## I.   BACKGROUND

Pursuant to a guilty plea, Petitioner was convicted, in the U.S. District Court for the District of Maryland, of participation in the affairs of an enterprise through a pattern of racketeering activity, RICO conspiracy, conspiracy to distribute and possess with intent to distribute heroin and cocaine, and conspiracy to defraud the United States.  The relevant conduct extended from early 1984 through sometime in 1988.  (Pre-Sentence Report ("PSR")at 21-23, 27-28.)[2]

On June 21, 1989, Petitioner was sentenced to a prison term of 47 years.  Petitioner became eligible for parole consideration on this sentence on November 1, 1998.

The U.S. Parole Commission conducted an initial parole hearing for Petitioner on August 5, 1998.  The hearing examiner recommended that Petitioner be paroled after service of 180 months.  The second examiner disagreed with this recommendation, noting that Petitioner was the recognized leader of a major drug conspiracy who admitted, as part of his plea agreement, to participating in the attempted murder of five persons, and who

---

[2] Because it and certain exhibits refer to the confidential Pre-Sentence Report ("PSR"), the Answer [8] has been filed under seal.  This Court has determined that any information from the PSR recited in this Opinion is relevant and appropriate for inclusion.

may have been responsible for ordering the murder of three more individuals.  The second examiner recommended continuing the matter to a 15-year reconsideration hearing in August 2013.  The Regional Commissioner adopted the second examiner's recommendations, as reflected in the Notice of Action dated August 31, 1998.  The National Appeals Board affirmed the decision of the Regional Commissioner.

The Parole Commission conducted a statutory interim hearing on August 9, 2000.  Based upon Petitioner's history of participation in a large drug conspiracy and the murders and attempted murders of several individuals, the hearing examiner recommended no change in the previous decision that Petitioner serve to a 15-year reconsideration hearing.  The Commission ordered no change in the 15-year reconsideration date.  The National Appeals Board affirmed this decision.

The Parole Commission conducted a second statutory interim hearing on July 2, 2002.  Based upon Petitioner's superior program achievement, the examiner recommended advancing the 15-year reconsideration hearing from August 2013 to February 2013.  The Commission adopted this recommendation.  Petitioner did not appeal this decision.

The Parole Commission conducted another statutory interim hearing on July 7, 2004.  The examiner recommended no change in the reconsideration hearing date.  The Commission adopted that

recommendation and the National Appeals Board affirmed. Thereafter, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, which this Court denied. <u>See</u> <u>Boardley v. Nash</u>, Civil Action No. 05-1915 (RBK).

Most recently, the Parole Commission conducted a statutory interim hearing on June 5, 2006. At that hearing, Petitioner requested that his case be reopened, presenting information that he wished the Parole Commission to consider regarding his alleged involvement in several murders, including a deposition given under oath by Aaron Headspeth. Mr. Headspeth previously had implicated Petitioner in those murders; that earlier information had been used to obtain a wiretap warrant for Petitioner's telephone. In his new statement, Mr. Headspeth retracted his previous statements, indicating that he had implicated Petitioner only in order to receive favorable treatment with respect to charges that were then pending against him. The Hearing Examiner deferred a final decision in order to allow review of Petitioner's information.

On January 10, 2007, a Hearing Examiner recommended that the Parole Commission deny the request to reopen Petitioner's case and order no change to continue to a 15-year reconsideration hearing in February 2013. Specifically, the recommendation stated:

> I have reviewed the documents submitted at the hearing
> and those contained in the Commission file.  These

4

documents include the Presentence Report, the materials submitted for his hearing appeals, hearing summaries and the currently submitted documents.  Although Boardley did not submit anything in writing to outline how the new information would lead to a change in the Commission's previous decision, he did tell the examiner that the cooperating individual was the person who gave the government information that was used to obtain a wiretap for his phone.  He also stated that the deposition shows that he was not involved in the drug organization and the witness lied about the drug-related murders.  The deposition was taken by subject's attorney in September 2005 at the state facility where the cooperating individual is currently serving a sentence.  The Affidavit outlines information provided by Headspeth to investigators.  There is no indication on the copy provided to the examiner that it was submitted to the court and it is not a complete document, ending at page 21.  The cooperating witness, Aaron Headspeth, states in his deposition that he lied to the government about Boardley's involvement in the drug organization and the murders.  He also states that he lied to get a deal on some possible gun charges he was facing, but he was not given any rewards for his information/cooperation because the government "did not believe most of what" he was saying.  Headspeth admits in the deposition that he took limited information given to him by the government and, in turn, told them what he thought they wanted to hear.

The issue of Boardley's involvement in the drug organization and the drug-related murders has been previously addressed several times on appeal.  After reviewing the deposition, Affidavit and the other documents, the deposition does not impact the previous findings made by the Commission.  Boardley pled guilty to a four-count superseding Information on 6/5/89.  The counts included conspiracy and RICO violations, Conspiracy to Distribute/Distribution of Narcotics and Conspiracy to Defraud the United States.  The information did not include references to the contract murders.  The government submitted a Report on a Convicted Prisoner by the US Attorney.  In that report, the government outlines the offense, which included the contract murders, and stated that there was substantial evidence set forth in the Statement of Facts which was submitted to the court that established that Boardley ordered the "hits".  There were four witnesses that

> described how subject ordered the shootings. The four witnesses named do not include Headspeth. It also reports that Boardley did not cooperate with the government and showed no remorse. At the sentencing hearing, he admitted his guilt, but stated that he felt that a "great injustice" had been done to him and his family.
>
> The Presentence Report outlines information given to the government by the individual witnesses and their testimony before the Grand Jury. These statements from the other witnesses outline Boardley's involvement in the drug organization and the contract murders. There is sufficient information contained in these documents to support the preponderance findings previously made by the Commission concerning his involvement in the drug organization and the murders. Although Headspeth is now recanting his previous statements, there are additional witnesses who provided information which was substantiated independently during the investigation. Headspeth recanting his previous statements does not change the statements made by the other cooperating witnesses. In addition, the copy of the Affidavit submitted by subject is not the entire document.
>
> ... Based on my review of the materials, I do not recommend that AUSA be contacted about this case since the documents submitted by the subject do not place the information used by the Commission to make its previous findings in question. Since the materials do not impact the previous decision, it is recommended that his request for reopening under 2.28(a) be denied and that there be no change in the previous decision to continue to a 15-year reconsideration hearing. ...

(Gervasoni Affidavit, Ex. P.)

On January 22, 2007, the Parole Commission issued its decision ordering no change in its previous decision to continue to a reconsideration hearing in February 2013. On December 18, 2007, the National Appeals Board affirmed.

> The National Appeals Board finds no merit in your claim that the Commission did not provide sufficient reasons for denying your request to reopen your case. The

> Board finds that the Commission reasonably concluded that the deposition and part of an affidavit in support of a wiretap [submitted at] your most recent interim hearing do not "impact the previous findings made by the Commission."
>
> After your initial hearing, the Commission issued a Notice of Action dated 8/31/98 providing specific reasons for the decision to continue you to a fifteen year reconsideration hearing. As stated in response to your previous appeal, the Commission's findings were based substantially on the report on convicted prisoner from U.S. Attorney. ... That document describes information from at least four other witnesses to support the Commission's findings. The report does not rely on any of Mr. Headspeth's testimony or government briefings.
>
> You have included with your appeal a copy of Mr. Andrews' plea agreement to support your argument that the Commission should disregard his statements and those of other witnesses given under cooperation agreements. One of the terms of the plea agreement you submitted requires Mr. Andrews to "testify fully and truthfully before grand juries and all trials of cases at which his testimony may be relevant." The Board does not find persuasive your argument that Mr. Andrews and every other cooperating witness on your case lied to the government about your involvement in the conspiracy.

(Gervasoni Affidavit, Ex. T.)

This Petition followed. Here, Petitioner asserts that there is no rational basis in the record for the Parole Commission's decision to deny reopening the hearing and to continue to the fifteen-year reconsideration hearing. Respondents counter that the decision is supported by substantial evidence. Petitioner has filed a Reply in support of the Petition and this matter is now ready for decision.

## II.  THE SENTENCING REFORM ACT

Before November 1, 1987, The Parole Commission and Reorganization Act of 1976 ("PCRA") governed the terms of federal sentences.  18 U.S.C. §§ 4201-4218 (repealed 1984, effective 1987).  Pursuant to 18 U.S.C. § 4206, the Parole Commission was authorized to award federal prisoners parole under specified circumstances.

> (a) If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines:
>
> (1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and
>
> (2) that release would not jeopardize the public welfare;
>
> subject to the provisions of subsections (b) [pertaining to written notice of decisions] and (c) [pertaining to decisions outside the guidelines] of this section, and pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1), such prisoner shall be released.
>
> ...
>
> (c) The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing: <u>Provided</u>, That the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon.
>
> ...

18 U.S.C. § 4206.

The discretion of the Parole Commission is to be guided by certain information.

> In making a determination under this chapter (relating to release on parole) the Commission shall consider, if available and relevant:
>
>> (1) reports and recommendations which the staff of the facility in which such prisoner is confined may make;
>> (2) official reports of the prisoner's prior criminal record, including a report or record of earlier probation and parole experiences;
>> (3) presentence investigation reports;
>> (4) recommendations regarding the prisoner's parole made at the time of sentencing by the sentencing judge;
>> (5) a statement, which may be presented orally or otherwise, by any victim of the offense for which the prisoner is imprisoned about the financial, social, psychological, and emotional harm done to, or loss suffered by such victim; and
>> [(6)] reports of physical, mental, or psychiatric examination of the offender.
>
> There shall also be taken into consideration such additional relevant information concerning the prisoner (including information submitted by the prisoner) as may be reasonably available.

18 U.S.C. § 4207.

Dissatisfied with this parole system, Congress passed the Sentencing Reform Act of 1984 ("SRA"), which repealed and replaced the PCRA, and which became effective on November 1, 1987.  Pub. L. No. 98-473, §§ 212, 218, 98 Stat. 1987, 2027 (codified as amended at 18 U.S.C. §§ 3551-59, 3561-66, 3571-74, 3581-86, 28 U.S.C. §§ 991-98 (1988)).  Under the SRA, parole was to be abolished for offenses committed after November 1, 1987,

9

the Parole Commission was to be phased out after five years, and prisoners were to serve uniform sentences under sentencing guidelines.  Section 235(b)(3) of the original SRA provided that:

> The United States Parole Commission shall set a release date, for an individual who will be in its jurisdiction the day before the expiration of five years after the effective date of this Act, <u>that is within the range that applies to the prisoner under the applicable parole guideline</u>.  A release date set pursuant to this paragraph shall be set early enough to permit consideration of an appeal of the release date, in accordance with Parole Commission procedures, before the expiration of five years following the effective date of this Act.

<u>Id.</u> (emphasis added).  On December 7, 1987, Section 235(b)(3) was amended to delete the clause requiring the Commission to set release dates <u>within</u> the guideline range.  <u>See</u> Sentencing Act of 1987, Pub.L. No. 100-182, § 2(b)(2), 1010 Stat. 1266 (1987).  The amended section 235(b)(3) requires the Parole Commission to set release dates "pursuant to section 4206 of Title 18 United States Code," which permits release dates <u>outside</u> the guideline range.

Congress repeatedly has extended the life of the Parole Commission to administer those prisoners with pre-SRA sentences. <u>See</u>, <u>e.g.</u>, Pub.L. No. 101-650, Title III, § 316, 104 Stat. 5089, 5115 (1990)  (extension to ten years); Pub.L. No. 104-232, § 2(a), 110 Stat. 3055 (1996) (extension to fifteen years); Pub.L. No. 107-273, § 11017, 116 Stat. 1758 (2002) (extension to eighteen years); Pub.L. No. 109-76, § 2, 119 Stat. 2035 (2005) (extension to twenty-one years).  Most recently, pursuant to the

United States Parole Commission Extension Act of 2008, P.L. 110-312, 122 Stat. 3013, the twenty-one year period was extended to twenty-four years.  Thus, the Commission is now scheduled to expire on October 31, 2011.

Pursuant to the guidelines promulgated by the Commission, at all times relevant to this action, a federal prisoner with an Offense Severity Rating of Eight has had a guideline range of at least 100-plus months to be served before release, regardless of the prisoner's Salient Factor Score.  28 C.F.R. § 2.20 Table "Guidelines for Decision-Making."  See 47 Fed.Reg. 56334-36 (Dec. 16, 1982); 50 Fed.Reg. 40365-67 (Oct. 3, 1985); 52 Fed.Reg. 46596-97 (Dec. 9, 1987).  In the regulation, the Parole Commission notes "For Category Eight, no upper limits are specified due to the extreme variability of the cases within this category."  28 C.F.R. § 2.20 Table "Guidelines for Decision-Making" Note 1.

### III. ANALYSIS

A federal court's role in reviewing decisions by the Parole Commission is limited.

> The appropriate standard of review of the Commission's findings of fact "is not whether the [Commission's decision] is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the [Commission's] conclusions embodied in its statement of reasons."  Zannino v. Arnold, 531 F.2d 687, 691 (3d Cir. 1976); see also 28 C.F.R. § 2.18 ("The granting of parole to an eligible prisoner rests in the discretion of the United States Parole

> Commission."). This Court should review, however, whether the Commission "has followed criteria appropriate, rational and consistent" with its enabling statutes so that its "decision is not arbitrary and capricious, nor based on impermissible considerations." Zannino, 531 F.2d at 690. To this end, "the Commission may not base its judgment as to parole on an inaccurate factual predicate." Campbell v. United States Parole Comm'n, 704 F.2d 106, 109 (3d Cir. 1983) (citations omitted).

Furnari v. Warden, Allenwood Federal Correctional Institution, 218 F.3d 250, 254 (3d Cir. 2000).

In making its decisions, the Parole Commission may consider hearsay, counts of an indictment that have been dismissed, and information in a separate dismissed indictment. See Campbell v. United States Parole Commission, 704 F.2d 106, 109-10 (3d Cir. 1983) (collecting cases).

"[T]he appropriate judicial remedy when an agency exceeds its discretion is a remand to the agency for further proceedings consistent with the court's opinion." Bridge v. United States Parole Commission, 981 F.2d 97, 105 (3d Cir. 1992) (citing Federal Power Comm. v. Idaho Power Co., 344 U.S. 17, 20 (1952)).

Here, Petitioner's contention, that there is not a rational basis in the record for the Parole Commission's decision, is meritless. The original determination to continue to a reconsideration hearing in fifteen years was not based upon information provided by Mr. Headspeth; rather, the decision was based upon information provided by several other witnesses. It was not irrational for the Parole Commission to rely on

12

statements given by cooperating witnesses.  Accordingly, the Petition will be denied.

## IV.  CONCLUSION

For the reasons set forth above, the Petition will be denied.  An appropriate order follows.


At Camden, New Jersey          s/Noel L. Hillman
                                       Noel L. Hillman
                                       United States District Judge

Dated: February 11, 2009